IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:16-cv-24720

SUSAN MAKAR,

      Plaintiff,

v.

CARNIVAL CORPORATION, a Panama
Corporation, d/b/a CARNIVAL CRUISE
LINES,

      Defendant.

## COMPLAINT

Plaintiff, SUSAN MAKAR, by and through undersigned counsel, files this Complaint against Defendant, CARNIVAL CORPORATION, a Panama Corporation, d/b/a CARNIVAL CRUISE LINES, and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

2.     Plaintiff, SUSAN MAKAR, at all times material hereto, was a permanent resident and citizen of the state of Ohio, was over the age of eighteen (18) years, and is otherwise *sui juris*.

3.     Defendant, CARNIVAL CORPORATION, a Panama Corporation, d/b/a CARNIVAL CRUISE LINES (hereafter "CARNIVAL"), was at all material times hereto, a foreign entity with its principal place of business in Miami, Florida, and engaged in the operation of a cruise line.  CARNIVAL is incorporated outside of Florida but does business in the State of Florida, and was doing business substantial in Miami-Dade County Florida.

**Page 1 of 13**

4.    Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state, and arises and is by virtue of the admiralty and/or maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is being filed in Federal court as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5.    Upon information and belief, this Court has personal jurisdiction over the Defendant CARNIVAL in that:

   a.  Defendant CARNIVAL has operated, conducted, engaged in, carried on business or business venture in Florida pursuant to and within the meaning of § 48.193(1)(a), Fla. Stat. and from which this action arises; and/or

   b.  Defendant CARNIVAL has committed a tortuous act within the state, pursuant to and within the meaning of § 48.193(1)(b), Fla. Stat. and from which this action arises; and/or

   c.  Defendant CARNIVAL has engaged in substantial and not isolated activity within this state, including the Southern District of Florida, pursuant to and within the meaning of § 48.193(2), Fla. Stat. and from which this action arises, at least by virtue of transaction of business within the State of Florida.

6.    Venue is proper in the Southern District of Florida, Miami Division because Defendant CARNIVAL has contractually agreed to jurisdiction in this venue.

7.    All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## GENERAL ALLEGATIONS

8.      On or about February 6, 2016, Defendant CARNIVAL owned, maintained, and/or operated a cruise ship in navigable water while the Plaintiff, SUSAN MAKAR, was a passenger aboard Carnival Conquest; therefore, Plaintiff's claims are governed by general maritime law. Specifically, this incident occurred as Plaintiff was embarking the ship on the aforementioned date.

9.      At all times material hereto, Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on or about the vessel, namely Carnival Conquest.

10.      Carnival owns and/or manages more than twenty cruise ships and encourages people of all ages, physical abilities, and experience to take a cruise, embark and debark the cruise ship.

11.      The Defendant, CARNIVAL, designates particular area(s) of the ship for embarking and disembarking the ship, and provides a particular path to funnel passengers, and particularly Plaintiff SUSAN MAKAR into the ship.  In this path includes an entryway/passageway with a door into the ship.  The entryway has a raised lip which required the use of a threshold ramp.

12.      At all times material hereto, the threshold ramp was unnecessarily and unreasonably steep.

13.      The Plaintiff, SUSAN MAKER, needed assistance embarking the ship due to her limited mobility.

14.      Defendant CARNIVAL had actual knowledge of her limited mobility at least and without limitation as evidenced by her travel documentation.

15.     Defendant CARNIVAL assisted with securing a mobility scooter for Plaintiff, SUSAN MAKAR.

16.     Defendant CARNIVAL searched on multiple occasions for a handicapped room for Plaintiff SUSAN MAKAR.

17.     Because the Defendant CARNIVAL knows that injuries frequently occur when passengers embark and debark the ship, and particularly when passengers endeavor to gain access to the ship through this entryway, the Defendant CARNIVAL was supposed to have employees on duty to assist passengers when the passengers are led through this entryway.

18.     Because the Defendant CARNIVAL knows that embarking and debarking the ship is particularly dangerous, Defendant CARNIVAL knows it must take precautions to ensure that the passengers are able to ingress into the ship through the entryway.

19.     On the date and time of the subject incident, Defendant CARNIVAL failed to require and failed to provide crewmembers posted on both sides of passengers as they stepped through the entryway, and failed to require that those crewmembers secure and control the passenger as the passenger makes the transition through the entryway.

20.     On the date and time of the subject incident, the Defendant, CARNIVAL, failed to warn its passengers, and particularly Plaintiff, of the need for such assistance and the steepness of the ramp and/or the lip on the ramp.

21.     On the date and time of the subject incident, the Defendant, CARNIVAL, failed to secure and control the Plaintiff as she made the transition into the ship.

22.     Defendant CARNIVAL knew or should have known that Plaintiff was particularly susceptible to injury during embarking the ship at least and without limitation because Plaintiff,

SUSAN MAKAR, had coordinated two scooters for delivery to her and her husband's stateroom by 2:00 pm on the day of the cruise

23. Defendant CARNIVAL knew or should have known that Plaintiff was particularly susceptible to injury during embarking the ship at least and without limitation because Plaintiff SUSAN MAKAR had requested Defendant CARNIVAL provide Plaintiff SUSAN MAKAR with handicap accommodations.

24. Defendant CARNIVAL knew or should have known that Plaintiff required assistance during embarkation of the ship at least because Plaintiff, SUSAN MAKAR, had coordinated with Defendant CARNIVAL two scooters for delivery to her and her husband's stateroom by 2:00 pm on the day of the cruise, and additionally, Plaintiff SUSAN MAKAR had requested—and Defendant CARNIVAL provided—a handicapped room.

25. Defendant CARNIVAL caused the entryway into the ship to become crowded and/or failed to exercise any control or direction of the passengers and the entryway as Plaintiff attempted to brave the threshold ramp for entry into the ship.

26. Plaintiff SUSAN MAKAR did not have any other options to ingress into the ship other than to brave the threshold ramp.

27. Once Plaintiff SUSAN MAKAR fell, Defendant CARNIVAL failed to provide adequate care, only providing Plaintiff SUSAN MAKAR with a single cup of ice for her injuries and sending her from the ship in a taxicab despite her horrific injuries.

28. Due to the Defendant CARNIVAL's negligence, the Plaintiff suffered serious, debilitating, and permanent injuries.

29. As a direct and proximate cause of the fall, Plaintiff SUSAN MAKAR suffered astounding injuries to her shoulder including without limitation fraying of the labrum superiorly,

grade I chondromalacia involving the humeral head and glenoid, generalized fraying of the labrum superiorly, bicep tendon rupture proximally, and a massive retracted tear involving the supra and infraspinatus tendons.

30.    As a direct and proximate cause of the fall, Plaintiff suffered such severe facial swelling and bruising to the extent that she was unrecognizable for months.

## COUNT I – LIABILITY OF
## DEFENDANT CARNIVAL FOR NEGLIGENCE

31.    Plaintiff realleges the allegations set forth above in paragraphs 1-30 as if set forth herein in full.

32.    The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited,* 888 So.2d 654 (Fla. 3d DCA 2004), 2004 A.M.C. 1913; citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); *The Moses Taylor*, 4 Wall. 411, 71 U.S. 411, 18 L. Ed. 397 (1866); *Carlisle v. Ulysses Line Ltd*., 475 So. 2d 248 (Fla. 3d DCA 1985).

33.    The Defendant also owed a "duty to exercise reasonable care under the circumstances". See, *Harnesk vs. Carnival Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL 329584 (S. D. Fla. 1991). The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited*, *S.A.*, 475 So. 2d 248 (Fla. 3d DCA 1985). Vierling v. Celebrity Cruises, 339 F.3d 1309, 1319-20 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is nondelegable, and that even the 'slightest negligence' renders a carrier liable).

**Page 6 of 13**

34.     The Defendant CARNIVAL has a duty to provide safe ingress and egress to and from the ship. *Tittle v. Aldacosta*, 544 F.2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F.2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So.2d 853 (Fla. 3DCA 2004); and *Chan v. Society Expeditions*, 123 F.3d 1287 (9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES,* 2013 WL 1024257 (S.D.Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F 3rd 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES,* 2013 WL 1024257 (S.D.Fla.), citing *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1319 (11th Cir. 2003).

35.     The Defendant CARNIVAL breached those duties and was negligent by:

a.   Failing to secure and control the Plaintiff during the transition through the entryway;

b.   Failing to secure and control the Plaintiff when confronted with the ramp;

c.   Failing to provide a safe and reasonably designed ramp to allow passengers of all ages and abilities including the Plaintiff to ingress and embark safely;

d.   Failing to provide crewmembers to assist passengers including the Plaintiff herein onto the ramp;

e.   Failing to provide crewmembers to control the crowd of passengers embarking onto the ship and braving the ramp.

f.   Failing to provide any handrails to assist passengers over the ramp and into the ship;

**Page 7 of 13**

g. Failing to provide passengers, including Plaintiff, with a ramp having a safe incline and/or no lips on the ramp that provides a tripping hazard.

h. Failing to adequately warn passengers, including Plaintiff, of a hidden lip on the threshold ramp.

i. Failing to adequately warn passengers, including the Plaintiff, concerning the dangers and risks associated with the ramp;

j. Failing to adequately supervise/monitor passengers entering the ship on the ramp;

k. Failing to adequately train crewmembers on how to aid passengers entry onto the ship and embarkation over the ramp;

l. Failing to adequately train staff on proper safety procedures for handicapped passengers embarking onto the ship;

m. Failing to promulgate and/or enforce adequate policies and/or procedures to ensure the reasonably safe embarkation onto the ship;

n. Failing to implement well-known standards of handrail design in the construction, maintenance, and operation of their ramp used to embark the ship.

o. Failing to warn Plaintiff of the unsteadiness, potentially dangerous characteristics, movement of the ramp, and the difficulties she might encounter traversing the ramp during embarkation of the ship;

p. Failing to provide the passengers including the Plaintiff herein with a safe means of embarking the ship;

q. Creating a dangerous condition and allowing the dangerous condition to exist which resulted in the accident sustained by the Plaintiff herein;

**Page 8 of 13**

r.  Negligently maintaining the ramp in an unreasonably dangerous manner that would allow passengers, including Plaintiff herein, to become injured while attempting to embark the ship;

s.  Negligently conducting operations such that passengers, including the Plaintiff herein, are required to confront the ramp without assistance when embarking;

t.  Failing to properly and reasonably post warning notices in the area;

u.  Failing to otherwise maintain the area and the premises in a safe and reasonable manner;

v.  Failing to provide the highest degree of care towards Plaintiff;

w.  Failing to provide the highest degree of care towards handicap passengers during embarkation onto the ship.

x.  Failing to comply with applicable standards, statutes, and/or regulations the violation of which is negligence per se and/or evidence of negligence; and

y.  Failing to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant CARNIVAL in the proof of negligence or proof of the absence of negligence.

36.  All or some of the aforementioned acts and/or omissions by the Defendant CARNIVAL, its agents and/or employees, directly caused and/or contributed to the Plaintiff being severely injured while embarking onto the ship.

37.  The Defendant CARNIVAL created a dangerous condition on the subject ship and allowed the dangerous condition to exist thereby causing an incident on the date referenced above in which the Plaintiff was severely injured.

38.     The Defendant CARNIVAL either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

39.     The Defendant CARNIVAL had constructive knowledge of the dangerous condition by, *inter alia*, (a) the length of time the dangerous condition existed; (b) the size and/or nature of the dangerous condition; and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant CARNIVAL should have known about it.

40.     In the alternative, notice to the Defendant CARNIVAL is not required because the Defendant CARNIVAL (a) engaged in and was guilty of negligent maintenance; and/or (b) engaged in and was guilty of negligent methods of operations.

41.     The negligent condition was created by the Defendant CARNIVAL; and was known to the Defendant CARNIVAL; and had existed for a sufficient length of time so that Defendant CARNIVAL should have known of it; and was a continuous or repetitive problem thus giving notice to the Defendant CARNIVAL.

42.     The negligent condition occurred with sufficient regularity so as to be foreseeable by the Defendant CARNIVAL, and should have been foreseeable by the Defendant CARNIVAL.

43.     The Defendant CARNIVAL's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost

income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past, and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant CARNIVAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

<u>**COUNT II**</u>
<u>**RES IPSA LOQUITUR**</u>

44.     Plaintiff realleges the allegations set forth above in paragraphs 1-44 as if set forth herein in full.

45.     The foregoing allegations evince, and Defendant CARNIVAL engaged in, conduct and omissions that are presumed to be negligent because:

      a.  The slip, trip and fall of Plaintiff would not ordinarily have happened unless someone was negligent;

      b.  The slip, trip and fall was caused by a ramp that only Defendant CARNIVAL controlled;

      c.   The slip, trip and fall would not have happened but for the negligence of the Defendant CARNIVAL; and

      d.   No other persons, including Plaintiff SUSAN MAKAR, voluntary actions caused or contributed to the trip and fall.

46.    As a direct, foreseeable, and proximate result of Defendant CARNIVAL's negligence based on the principles of res ipsa loquitor, Plaintiff, SUSAN MAKAR, suffered permanent bodily injuries and resulting pain and suffering, disfigurement, disability, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment. The losses are either permanent or continuing and Plaintiff will suffer the expenses and losses in the future.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant CARNIVAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, SUSAN MAKAR, demands trial by jury on all issues so triable as a matter of right.

DATED this 11 day of November, 2016.

Respectfully submitted,

Tucker IP
*Attorney for Plaintiff*
110 SE 6TH Street, Suite 1709
Fort Lauderdale, FL 33301
Telephone: 954.204.0444
Fax: 954.358.4946
mtucker@tuckeriplaw.com
www.tuckeriplaw.com


By: /s/ Matthew Sean Tucker
Matthew Sean Tucker
Florida Bar No.: 90047